**THOMAS R. RASK, III** OSB No. 934031
trask@kelrun.com
**JULIE PARRISH,** OSB No. 233864
jparrish@kelrun.com
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill Street, Suite 600
Portland, OR 97204
Telephone: 503-222-3531
Fax: 503-227-2980
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MICHAEL FIRESTONE** and **LINDSAY BERSCHAUER**, individually and as husband and wife; **KATERINA EYRE**, an individual; **TAYLER HAYWARD**, an individual; **LISA LEDSON**, an individual, **THOMAS REILLY**, an individual, and **GERALD EARL CUMMINGS, II**, an individual,<br><br>**Plaintiff(s),**<br><br>v.<br><br>**JANET YELLEN**, in her official capacity as the Secretary of the United States Department of the Treasury, **UNITED STATES DEPARTMENT OF THE TREASURY**, and **ANDREA GACKI**, in her official capacity as Director of the Financial Crimes Enforcement Network,<br><br>**Defendant(s).** | **Case No.**<br><br>**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 1**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Plaintiffs Michael Firestone and Lindsay Berschauer, Katerina Eyre, Tayler Hayward, Lisa Ledson, Thomas Reilly, and Gerald Earl Cummings, II (collectively, "Plaintiffs") bring this civil action for declaratory and injunctive relief against Defendant Janet Yellen, in her official capacity as Secretary of the United States Department of the Treasury, and Andrea Gacki, in her official capacity as Acting Director of the Financial Crimes Enforcement Network (collectively, "Defendants"), and allege as follows:

## **INTRODUCTION**

1.      Plaintiffs are Oregon residents who have properly filed and organized lawful corporate entities with the Oregon Corporation Division of the Secretary of State in accordance with the statutes and administrative rules of the State of Oregon (the "State").

2.      Since statehood and prior to January 1, 2024, it has been the State, and not the federal government, that has granted to a business corporation "the blessings of potentially perpetual life and limited liability to enhance its efficiency as an economic entity." *First Nat'l Bank v. Belotti*, 435 U.S. 765, 826 (1978).  Heretofore, the Corporation Division has acted as a neutral incorporator of corporate entities, and it has not served as an arm of any law enforcement agency.

3.      Oregon's entity formation laws reflect the values and judgment of State lawmakers in that individuals need not disclose sensitive information as a condition of forming corporate entities.  ORS 63.047 describes the requirements for filing Articles of Incorporation, and ORS 63.047(d) requires that only the name and address of the "organizers" be provided. "Organizers" are defined in ORS 62.511 only as individuals who are 18 years of age or older, a domestic or foreign corporation or cooperative, a partnership or an association.  State law also allows a corporate entity to be filed by a registered agent on behalf of the entity being created. ORS 60.111 only requires that the registered agent have residency in the State with an address where the business office is identical to the registered office.  The State has never required any

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 2**

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

information from an individual organizer, organizing entity, or registered agent that could be considered personal or sensitive information, including, for example, a social security number, picture identification, or even proof of U.S. citizenship.  Further, the information that is collected by the State has never been collected for the express purpose of expanding the capabilities of law enforcement agencies to invade the privacy of private citizens or for enhancing the ability of law enforcement to search for criminal activity without reasonable suspicion or probable cause.

4.    The act of filing a corporate entity in Oregon with the Corporation Division is not overly burdensome in that a single filing form generally covers the registration of most corporate entity types.  Further, the Secretary of State's fees are reasonable in that most for-profit filing fees are a mere $100.00 while non-profit filing fees are just $50.00.  Those who begin entity operations without filing, or who file incomplete filings are not punished with either civil penalties or criminal sanctions.

5.    The Corporate Transparency Act, Pub. L. No. 116-283, 134 Stat. 4604 codified at 31 U.S.C. § 5336 (the "CTA" or the "Act") is a federal statute enacted on January 1, 2021.  The requirements that the CTA imposes on individuals who own a corporate entity, serve on a nonprofit board, or who are associated together for a non-commercial activity, and those registered agents who help those individuals organize, not only exceed the authority of the federal government, but the requirements are also overly burdensome and violate the Plaintiffs' civil rights.

6.    The CTA mandates that persons who form entities under State law shall now be required to report "sensitive information," *id.* § 5336 note (6), to the federal Financial Crimes Enforcement Network ("FinCEN") and be compelled to do so under the threat of up to $500.00 per day in civil penalties; criminal fines up to $10,000.00 or imprisonment of up to two years, or both; or any combination thereof that the federal government might choose to enforce against a person the federal government might choose to prosecute when the federal government

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 3**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

determines that a person was "willful" (undefined) in failing to comply with the law.

7.    In Oregon, the CTA will capture the "sensitive information" of an estimated 84,000 new entities created in 2024, in addition to the tens of thousands of Oregon entities that are not subject to an exemption under the CTA.  FinCEN will then make that information available, without a valid search warrant or consent of the individual, to federal law enforcement agencies, foreign tribunals, and others for law enforcement purposes.  None of the CTA's allowed uses are in furtherance of a business purpose for the filer, and the CTA requires that should the State seek that same information for law enforcement purposes, the State may only do so with a valid search warrant.

8.    The individuals who will be required to report to FinCEN their "sensitive information" will include mom-and-pop businesses, franchisees, manufacturers, online retailers, farmers, fishers, loggers, plumbers, restauranters, electricians, mechanics, lawyers, architects, nurse practitioners, dentists, doctors, yoga instructors, landscapers, and any other privately owned enterprise or business with 20 or fewer full-time employees **or** less than $5 million in annual gross receipts or sales.  *Id*. § 5336(a)(11)(B)(xxi).  It will also include, among others, individuals organized for associational and non-commercial purposes (i.e., homeowners' associations and youth sports organizations), and will ensnare individuals seeking to organize for non-profit purposes but whose entities have yet to obtain federal 501(c) tax-exempt status.

9.    The CTA will also apply to some individuals who are the registered agents of or who operate a business which is (a) sanctioned by policies supported with a public vote of a majority of Oregon voters; (b) licensed by State agencies; and (c) even funded by the support of State tax dollars as voted on by the Oregon Legislature, but whose business activities would be considered illegal and punishable under other federal laws.

10.    The CTA, with requirements that individuals provide valid identification such as a State-issued driver's license or U.S. passport, would create a burden and real threat of

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 4**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

deportation for non-U.S. citizens who do not possess the type of identification required by the CTA, but who are otherwise allowed to register and operate a lawful business under State law and who are allowed to reside in Oregon under the State's sanctuary laws.

11.    For these reasons, Plaintiffs ask this Court to declare the CTA facially unconstitutional as applied to Plaintiffs and other similarly situated Oregon corporate entity filers who are subject to the CTA requirements on the basis that (a) the CTA exceeds Congress's Article I, Section 8 authority by usurping the State's Tenth Amendment authority to govern over the ministerial act of corporate formation, and (b) violates Plaintiffs' constitutional and civil rights under the First, Fourth, Fifth, and Ninth Amendments of the U.S. Constitution.

12.    Plaintiffs also ask this Court to permanently enjoin Defendants from enforcing the CTA requirements with respect to the collection and sharing of Plaintiffs' and others "sensitive information," and enjoin Defendants from levying any civil fines or criminal sanctions against Plaintiffs and others whose FinCEN registration and filing has already come due under CTA deadlines.

13.    Plaintiffs bring this lawsuit to enforce their fundamental constitutional rights and liberties that the Unites States Constitution protects for all people.  Plaintiffs also seek to recover their attorneys' fees, costs, and expenses for this action under the Equal Access to Justice Act, 28 U.S.C. § 2412, and for any other relief the Court may order.

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction under 5 U.S.C. § 702 and 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

15.    This Court has jurisdiction to render declaratory relief under 28 U.S.C. § 2201, 2022, and 5 U.S.C. §  §  705, 706(2) because an "actual controversy" exists between the parties within the meaning of 28 U.S.C. § 2201(a).

16.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(3) because no real

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 5**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

property is involved, all Plaintiffs reside in this District, and Defendants are agencies or officers of the United States sued in their official capacities.

## PARTIES

17.     Plaintiffs reflect a cross-swath of the thousands of existing and newly formed Oregon entities that submit an entity filing with the Oregon Secretary of State every month. They represent rural and urban businesses.  They are people who make a living with their hands, on farms, and in clinical and professional settings.  They reflect individuals who have worked hard to obtain the skills necessary to join a licensed Oregon profession.  They reflect first-generation immigrants and college students who formed businesses in the hopes of obtaining their piece of the American dream.

18.     Plaintiffs Michael Firestone and Lindsay Berschauer, individually and as husband and wife, are sole shareholders in three entities which require FinCEN reporting.  Both husband and wife each own one business individually, and together, they are equal partners in the third entity.  Plaintiffs are both U.S. citizens residing in Yamhill County.  Two of the covered entities Plaintiffs Firestone and Berschauer own are agricultural in nature and serve the growing/farming community in Oregon's renowned hazelnut industry.  None of these two Plaintiffs' three covered entities qualify for an exemption from the CTA's requirements to report to FinCEN, and without a declaration that the CTA is unconstitutional and without enjoining Defendants from enforcing the law, Plaintiffs will be required to comply with the CTA or be subject to civil fines and/or criminal penalties.

19.     Plaintiff Katerina Eyre, individually, owns a covered entity which holds an equity stake in another business that is also required to comply with the CTA.  She is a resident of Washington County.  Plaintiff is the daughter of immigrants and a first-generation American business owner.  Plaintiff Eyre's covered entity does not qualify for an exemption from the CTA's requirements to report to FinCEN, and without a declaration that the CTA is

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 6**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

unconstitutional and without enjoining Defendants from enforcing the law, Plaintiff will be required to comply with the CTA or be subject to civil fines and/or criminal penalties.

20.     Plaintiff Tayler Hayward is a 20-year-old college student who was adopted out of California's foster care system.  Prior to moving to Oregon in 2024, Plaintiff, a first-generation college student, earned some of her income by selling hand-made jewelry under a business license issued by the City of Redding, California.  Plaintiff is a U.S. citizen and a new resident of Clackamas County.  She is still working to put herself through college with no familial support.  She recently filed in 2024 her business with the Oregon Secretary of State so that she might continue to sell her hand-made items at local area markets to raise money for college tuition.  Plaintiff Hayward's covered entity does not qualify for an exemption from the CTA's requirements to report to FinCEN, and without a declaration that the CTA is unconstitutional and without enjoining Defendants from enforcing the law, Plaintiff will be required to comply with the CTA or be subject to civil fines and/or criminal penalties.

21.     Plaintiff Lisa Ledson is a majority shareholder in a newly formed entity she owns with her spouse.  Plaintiff is the mother of twin daughters, one of whom is severely disabled.  Plaintiff's business, a nursing delegation service, will help families who are caring for loved ones with severe developmental disabilities, including medically fragile children.  Plaintiff also serves as a founding board member of a newly formed entity that will seek but will not likely obtain 501(c)(3) tax exempt status from the Internal Revenue Service in time to avoid being subject to FinCEN requirements.  Plaintiff is a U.S. citizen and resident of Clackamas County.  Plaintiff's nursing delegation business does not qualify for an exemption from the CTA's requirements to report to FinCEN, and Plaintiff's nonprofit will not qualify for an exemption within 90 days of its entity filing.  Without a declaration that the CTA is unconstitutional and without enjoining Defendants from enforcing the law, Plaintiff will be required to comply with the CTA for both entities or be subject to civil fines and/or criminal penalties.

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 7**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

22.     Plaintiff Reilly is a mechanic who owns two entities,  an automotive repair business and a car rental business.  Plaintiff is a U.S. Citizen and a resident of Clackamas County.  Plaintiff Reilly's covered entities do not qualify for an exemption from the CTA's requirements to report to FinCEN, and without a declaration that the CTA is unconstitutional and without enjoining Defendants from enforcing the law, Plaintiff will be required to comply with the CTA or be subject to civil fines and/or criminal penalties.

23.     Plaintiff Cummings owns two entities that will be subject to FinCEN reporting requirements, one registered in Oregon and the other in Washington state.  Plaintiff's Oregon entity is in the insurance industry, but not subject to an exemption from FinCEN reporting requirements such as the exemption large corporate insurance entities enjoy under the law. Plaintiff's Washington entity is also registered as a foreign corporation in Oregon with a separate assumed business name.  Plaintiff's Washington entity conducts business in part by offering credit card processing services as a reselling vendor of those services to end-user customers. Though Plaintiff's Washington entity has a nexus with the type of banking and financial services that are otherwise exempt under the CTA, as a reselling vendor and small business, Plaintiff is not exempt in the same way large corporate banks and credit card companies are exempt from FinCEN reporting requirements.  Plaintiff is a U.S. citizen and a resident of Columbia County, Oregon.  Plaintiff Cummings's covered entities do not qualify for an exemption from the CTA's requirements to report to FinCEN, and without a declaration that the CTA is unconstitutional and without enjoining Defendants from enforcing the law, Plaintiff will be required to comply with the CTA or be subject to civil fines and/or criminal penalties.

24.     Defendant United States Department of the Treasury is an executive-branch department of the federal government headquartered in Washington, D.C., responsible for the administration and enforcement of the CTA through FinCEN.

25.     Defendant Yellen is the Secretary of the United States Treasury and is named as a

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 8**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

party in her official capacity.

26.    Defendant Gacki is Director of FinCEN and is named as a party in her official capacity.

## FACTUAL ALLEGATIONS

### The Requirements of the CTA

27.    The CTA was enacted on January 1, 2021, as part of the omnibus National Defense Authorization Act for Fiscal Year 2021.[1]  The stated purpose of the CTA is to combat money laundering, the financing of terrorism, and other illicit activity by cracking down on the use of anonymous "shell companies."  To that end, the CTA requires most U.S. corporate entities to provide extensive personal ownership information to FinCEN.

### Reporting Obligations.

28.    Specifically, the Act requires "reporting companies" to provide to FinCEN data regarding each "beneficial owner" and "applicant."  Each of those terms is broadly and ambiguously defined:

- A "reporting company" is defined as a "corporation, limited liability company, or similar entity that is (i) created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe; or (ii) formed under the law of a foreign country and registered to do business in the United States by the filing of a document with a secretary of state or a similar office under the laws of a State or Indian Tribe."  31 U.S.C. § 5336(a)(11)(A).

- A "beneficial owner" is defined as "an individual who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise" (i) "exercises substantial control over the entity;" or (ii) "owns or controls not less than 25 percent of the ownership interests of the entity."  *Id*. § 5336(a)(3)(A).

- An "applicant" is defined as any individual who files an application to form a reporting company or "registers or files an application to register" a

---

[1] William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3388.

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 9**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

non-U.S. company to do business in the United States.  *Id*. § 5336(a)(2).

29.    For each of the covered individuals, the reporting company must provide to FinCEN their full legal name, date of birth, current residential or business street address, and "unique identifying number from an acceptable identification document," such as an unexpired passport or State-issued identification card or driver's license, or FinCEN-issued identifier number.  31 U.S.C. § 5336(b)(2)(A).  This personal information must be reported upon formation or registration of the reporting company, or, in the case of existing reporting companies, in a "timely manner," and not later than two years after the effective date of the regulations that FinCEN is directed to promulgate.  *Id*. § 5336(b)(1)(B), (C).  If there are any changes to the reported data—such as if a "beneficial owner" or "applicant" moves their personal residence or gets a new driver's license—the entity must provide updated information to FinCEN within 30 days after the change.

30.    Reporting companies that "willfully" fail to comply with the CTA's reporting requirements are subject to a civil penalty of up to $500 per day; criminal penalties of up to $10,000, two-years' imprisonment, or both; or any combination thereof.  *Id*. § 5336(h)(1), (3).  There is no safe harbor in the CTA if someone fails to report to FinCEN as required by the CTA.

31.    The CTA requires FinCEN to keep the personal data of the reporting company's beneficial owners and applicants for at least five years after any change in the personal information of those individuals, upon sale or transfer of leadership in the entity, or after the date on which the reporting company is wound down.  *Id*. § 5336(c)(1).

**Database of Personal Information.**

32.    The disclosures required by the CTA will be used to create a vast database of personal information regarding "beneficial owners," "applicants," and those individuals who have "substantial control" over a reporting entity, regardless of whether those reporting entities are engaged in commercial or non-commercial activity.

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 10**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

33.     The CTA requires FinCEN to keep the personal data of a reporting company's beneficial owners and applicants for at least five years after the date on which the reporting company is wound down.  31 U.S.C. § 5336(c)(1).  For the duration of FinCEN's possession of the required personal information—which, given the lifespan of many companies, is likely to far exceed five years—FinCEN may share without a search warrant, and without the reporting company's consent, the reported personal data of reporting companies with federal law enforcement agencies and with "a Federal functional regulator or other appropriate regulatory agency," including foreign governmental agencies.  *Id*. § 5336(c)(2)(B).  As applied to financial institutions for customer due diligence, sharing data maintained in FinCEN's database requires a reporting company's consent.  While the federal government can share FinCEN data unfettered with any federal law enforcement agencies for what amounts to warrantless searches of private citizens without reasonable suspicion or probable cause, the federal government requires State, local and tribal governments to obtain a search warrant to access the same data.  *Id.*

34.     If the request for personal data comes from a State, local, or tribal law enforcement agency, the statute requires that it come through "appropriate protocols," and that "a court of competent jurisdiction . . . has authorized the law enforcement agency to seek the information in a criminal or civil investigation."  *Id*. § 5336(c)(2)(B)(i)(II).  However, no court authorization is required if the request comes from a "Federal agency engaged in national security, intelligence, or law enforcement activity, for use in furtherance of such activity."  *Id*. § 5336(c)(2)(B)(i)(I).  Likewise, if a federal agency makes a request for a beneficial owner or an applicant's personal data on behalf of a non-U.S. law enforcement agency, prosecutor, or judge, for instance, pursuant to an international treaty, then FinCEN appears to have no explicit authority to deny the request so long as the requested data is limited to the "investigation or national security or intelligence activity" that the foreign or international entity has in mind.  *Id*. § 5336(c)(2)(B)(ii).

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 11**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

35.     The "Miscellaneous" provisions of the CTA allow FinCEN to disseminate to third parties a beneficial owner or applicant's personal data, even in what appears to be in a disaggregated format, under the auspices of engaging in government research beyond the stated goals of the CTA.  These third parties can include law enforcement entities, the Government Accountability Office, Congress, regulators, data and technology companies, academic and other research groups, and more, all who can access Plaintiffs' and others' information without obtaining the consent of the individual whose data is being data-mined for any number of reasons as provided by the CTA in these provisions.

**<u>Burdens Imposed on States</u>.**

36.     The CTA requires that relevant federal, State, and tribal agencies, as determined by the Secretary of the Treasury, must "cooperate with and provide information requested by FinCEN" to create and maintain the intended database of "sensitive" personal information.  *Id*. § 5336(d)(2).

37.     While the Act contemplates that funds will be made available to States to alleviate the financial and other burdens imposed upon them by the CTA, based upon the almost non-existent effort by the Oregon Secretary of State to communicate with the hundreds of thousands of Oregon entities subject to the burden of reporting to FinCEN, it would appear that if any funds have been made available to the State, those funds were insufficient to encourage the State to communicate FinCEN reporting requirements in any meaningful way.  According to the CTA, as a condition of the supposed funds, "each State and Indian Tribe shall, not later than 2 years after the effective date of [FinCEN's reporting regulations]," notify reporting company filers of the personal-data reporting requirements and update relevant websites, instructions, and forms.  *Id*. § 5336(e)(2)(A).  However, because the penalties for individual non-compliance with the CTA, including upon State citizens and permanent residents, are so severe and because the federal government itself has no ability to notify actual State-level filers of the CTA's requirements at

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 12**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

the time of formation, the States will be compelled to notify their citizens and permanent residents of the CTA's requirements to save them from fines and imprisonment, whether or not federal funds are actually made available.  On information and belief, Oregon's effort to notify beneficial owners and applicants has been limited to one email to existing filers prior to January 1, 2024, a link buried in the bottom of one email to new entity filers filing after 2024, and a one-page FAQ that a new filer cannot navigate to from the Secretary of State's Corporation Division homepage.

### The CTA's Injurious Impact on Plaintiffs

38.     The impact to Plaintiffs if the CTA is allowed to stand is serious and cannot be dismissed as simply a matter of not wanting to comply with a government regulation of business or entity ownership.  The true costs of the CTA to Plaintiffs and others similarly situated come in several forms, including the financial costs and burdens of compliance under the threat of civil and criminal penalties with no due process or safe harbor for failing to comply.  Further, compliance with the CTA constitutes an unwarranted invasion of Plaintiffs' privacy and does so in violation of their civil rights.

39.     In order to determine whether a filing entity is subject to FinCEN reporting, Plaintiffs may have to consult with lawyers or accountants, professionals who themselves might not be clear whether Plaintiffs would be subject to the CTA rules for determining who is required to file.  The CTA has over two dozen exemptions, and there is no analogous language in State law with respect to who is a "beneficial owner," an "applicant," or who "exercises substantial control" over an entity.  Plaintiffs would not incur the cost of compliance once, but rather, every time they made a change that for example, updated a home or business address; added or removed an officer, director, or board member; or resulted in the sale or closure of the entity. They must make these changes within 30 days of the event or be subject to civil fines and criminal penalties.  The cost of compliance further burdens Plaintiffs in that some lawyers and

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 13**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

accountants have taken the position that they will not manage these FinCEN filings as they could be subject to the reporting requirements and use of their own "sensitive information" for each of their clients' entities. This puts Plaintiffs and others similarly situated in the position of having to navigate complex FinCEN rules without the benefit of professional help, even if Plaintiffs could afford the burden of reporting costs.

40.     While the CTA's stated purpose of combatting criminal activity, money laundering, and other financial crimes is not without importance, the burden will fall substantially and disproportionately on small businesses and entities organized for non-commercial purposes, regardless of whether there is any reason to believe these organizations and small businesses have engaged in any criminal activity or misconduct. The CTA exempts the largest corporations, financial institutions, insurance companies and other entities that are more likely to have the necessary financial resources and access to client financial information to detect these kinds of crimes.

41.     In doing so, the CTA not only creates a disproportionate cost of compliance that expressly disfavors smaller entities, but the inadequate tailoring leave the CTA both over- and under-inclusive. The Act covers tens of millions of small entities in a dragnet that avoids large corporations and financial institutions, irrespective of the actual respective threats posed by each of contributing – knowingly or unwittingly – to money laundering on a national scale.

42.     FinCEN itself recognized that the Act covers "approximately 32.6 million existing reporting entities" and would "have a significant economic impact on a substantial number of small entities." 87 Fed. Reg. at 59549, 59584. FinCEN's own estimations were that the total cost of filing reports mandated by the CTA would be $22.7 billion in its first year. *Id.* at 59565-86. FinCEN estimates that the cost for each reporting company to remain compliant with the law will range from $85.14 to $2,614.87 depending on the complexity of the entity. 87 Fed. Reg. at 59573.

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 14**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

43.     Because the CTA does not restrict reporting obligations to entities and individuals that are suspected of committing wrongdoing, and because it exempts those entities that might be better situated to helping FinCEN achieve its law enforcement objectives, Plaintiffs will bear the burden of an unwarranted and unreasonable intrusion into their privacy and be the subjects of warrantless searching by numerous federal law enforcement agencies.

44.     The Oregon Corporation Division allows any individual over the age of 18 years old who is filing an entity for a lawful purpose to register the entity with the State.  Oregon's organizational statutes do not require identification, birth dates, or active personal identification numbers.  Further, the information the State does collect has never been organized for the express purpose of creating a searchable database of the personally identifiable and "sensitive information" of entity filers for the ease of law enforcement entities to conduct warrantless searches in furtherance of criminal investigations.

45.     Plaintiffs rightly fear that the CTA is an unprecedented federal police power that relies upon information related to lawful entity formation as allowed under State law.  The information collected by FinCEN is not confined to the collection of information to be used in interstate commerce, particularly when the CTA requires FinCEN reporting for noncommercial entities functioning only within the State, or noncommercial entities with objectives to govern real property situated in the State, like a homeowners' association.

46.     Not only does the CTA compel searches without reasonable suspicion or probable cause, but it does so for the express purpose of populating a criminal law enforcement and financial intelligence database and it further does so under threat of fines and imprisonment if Plaintiffs and others similarly situated fail to comply.

47.     Where corporate formation under State law is a ministerial act in furtherance of being recognized by the government to engage in business or associate for stated purpose, FinCEN reporting has neither of those ministerial purpose.  Rather, FinCEN reporting compels

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 15**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

the speech of Plaintiffs and exposes Plaintiffs and others into self-incriminating to federal law enforcement agencies information about themselves or their entities, which could be in violation of federal laws (but lawful in Oregon), and requires Plaintiffs to be subjected to warrantless searches at any time a federal law enforcement agency (or foreign tribunal) seeks to access Plaintiffs' and others' personally identifiable and "sensitive" information.

48.     That some entities formed in Oregon could possibly be formed with the intent to engage in the types of criminal activity that the CTA seeks to prevent, it cannot be said that requiring Plaintiffs and nearly all of the other tens of thousands of lawful Oregon entity filers who are not exempt under the CTA to submit their personally identifiable and "sensitive" information into a federal database for law enforcement purposes will result in a reduction of criminal activity.  Further, it is within the power of the State, not the federal government, to police corporate filings.  ORS 60.074 already makes it a crime to submit a corporate filing to the Corporation Division if the purpose of that filing is to create an entity for an illegal purpose or with the intent to fraudulently conceal business activity from a governmental agency.

49.     Plaintiffs argue it is within the State's existing police power to enforce its own laws, and it does so without using the State's corporate filing database as a blunt instrument for law enforcement purposes.  Plaintiffs are rightly concerned that FinCEN, as documented in its Final Rule, is a means of sidestepping constitutional safeguards because, as then-Director of FinCEN Kenneth Blanco testified before Congress, without the CTA, gathering information of beneficial owners would require "human source information, grand jury subpoenas, surveillance operations, witness interviews, [and] search warrants."  87 Fed. Reg. at 59504.

50.     If the federal government is allowed to compel Plaintiffs to turn over to law enforcement their personally identifiable and "sensitive" information, and do so under threat of civil fines and imprisonment, it might "significantly reduce the amount of time" *Id.* it would take federal law enforcement to properly produce a search warrant, but it would come at a significant

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 16**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

cost to Plaintiffs' privacy rights and to the right to be free from an unreasonable and unfounded government search.  Moreover, by allowing FinCEN to prospectively search for crime, unfettered, and using a massive database created for the express purpose of aiding law enforcement, and to do so without human sources, grand juries, and judicially issued warrants, the data as collected and used by FinCEN would defeat the constitutional safeguards of the Fourth and Fifth Amendments that otherwise serve to protect Plaintiffs and others similarly situated.

51.    The Miscellaneous provisions of the CTA make clear that FinCEN intends to use Plaintiffs' provided data creating a massive law enforcement repository for warrantless searches.  These provisions include that FinCEN can provide Plaintiffs' data in a disaggregated way to data companies, researchers, non-law enforcement agencies, and others, without the consent of Plaintiffs, and for purposes unrelated to the stated objectives of CTA.

52.    Further, an examination of the legislative history of the CTA suggests the presence of a Congressional intent unrelated to the Act's stated objectives; namely, that the Act would compel disclosure of the identities of political donors.  The original version of the Act, introduced in 2017, was co-sponsored by Senator Sheldon Whitehouse, who gave a speech on the Senate floor explaining that a beneficial ownership reporting regime would provide a means of stopping the "unprecedented dark money organizations, groups that we allow to hide the identities of their big donors [such as] American dark money emperors, like the Koch Brothers." Congressional Record, Vol. 163, No. 101 at S3468 (Senate, June 14, 2017).  Since the CTA passed, commentators have echoed this apparent role of the Act, and how it can tackle "dark money" in the influence of election outcomes.  Devon Himelman, *How the Corporate Transparency Act Can Shine Light on Dark Money in U.S. Elections*, Global Anticorruption Blog (April 15, 2022), https://globalanticorruptionblog.com/2022/04/15/how-the-corporate-transparency-act-can-shine-light-on-dark-money-in-u-s-elections/.

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 17**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

53.     Plaintiffs fear that even if it could be shown that the CTA does not exceed
Congress's constitutional authority over Plaintiffs' civil rights, based on previous information
data breaches of the Department of the Treasury where individual tax returns of private citizens
were leaked into public view, that Defendants lack the necessary safeguards to protect the
"sensitive information" of Plaintiffs.

54.     Plaintiffs fully support Congress's desire to attack money laundering and
terrorism financing, but they do not support being forced to comply with an unconstitutional
statute that effectively penalizes hard-working U.S. small business owners and other entity filers
who do not engage in commercial activity while the largest corporations, financial and insurance
institutions who could better help respond to any perceived threat of these activities are
exempted.  The financial burden of regular reporting and the loss of constitutional rights caused
by such reporting falls squarely on Plaintiffs.

## CAUSES OF ACTION

### COUNT ONE

**Unconstitutional Usurpation of the States' Power to Regulate Entity Formations in Excess
of Congress's Constitutional Powers**

**(U.S. Const. Art. I, amends. IX, X)**

55.     Plaintiffs reallege and incorporate by reference each of the Complaint's
allegations stated in paragraphs 1 through 54 above.

56.     The CTA aims to establish "a clear, Federal standard for incorporation practices,"
31 U.S.C. § 5336 note (5)(A), above and beyond what State entity laws require, imposing a
penalty—mandatory disclosure of names, addresses, birth dates, and identification numbers of all
beneficial owners and applicants—on persons who seek to form entities under State law.  The
power to regulate corporate formation has historically fallen within the purview of the State, and
not the federal government.  As detailed above, failure to make these disclosures is punishable

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 18**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

by fines and imprisonment.  In addition, the CTA also interferes with State authority to determine the permissible structures of corporate ownership by prohibiting any State from authorizing the issuance of "a certificate in bearer form evidencing either a whole or fractional interest" in an entity created and organized under that State's laws.  31 U.S.C. § 5336(f).  Upon information and belief, although many States authorized such bearer certificates through the early twenty-first century, no State currently does so.  Nevertheless, the Act's categorical prohibition is an unprecedented intrusion on the States' sole authority to regulate the formation and governance of State entities' internal affairs.

57.    One of the enumerated powers of Congress—and perhaps the most heavily used of those powers in recent decades—is the power to regulate foreign, interstate, or Indian commerce.  Congress also can wield its taxing power to tax income earned by individuals through corporate entities as it currently does through federal income taxes on corporations.  However, Congress has no regulatory interest or constitutional authority over corporate **formation** because a reporting company has not yet engaged in any foreign, interstate, or Indian commerce at the moment of its inception.  The formation of an entity under State law is an entirely ministerial act and many entities will engage in no activity until some indeterminate time after they have been formed.

58.    Indeed, many of the "reporting companies" subject to the Act may **never** engage in any such foreign, interstate, or Indian commerce.  State law permits the formation of a corporate entity for numerous purposes unrelated to commerce, such as local property holding or associational entities like neighborhood organizations and residential housing associations.  For example, ORS 60.074 states: "Every corporation incorporated under this chapter has the purpose of engaging in **any lawful business** (emphasis added) unless a more limited purpose is set forth in the articles of incorporation.  Section 101(b) of the Delaware General Corporation Law provides that a "corporation may be incorporated or organized under this chapter to conduct or

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 19**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

promote any lawful business **or purposes**, except as may otherwise be provided by the Constitution or other law of this State." 8 Del. Code § 101(b) (emphasis added). Similarly, Section 18-106(a) of the Delaware Limited Liability Company Act provides that "[a] limited liability company may carry on any lawful business, purpose or activity, whether or not for profit . . . ." 6 Del. Code § 18-1101. A large proportion of the CTA's coverage is thus likely to include entities that do not engage in commerce or business at all, or that engage in strictly intrastate commerce (such as residential real property holding) outside the reach of federal regulation.

59.     This fact exposes a fundamental flaw in the CTA's structure: it does not regulate any specifically identified **commercial** activity. "The Constitution grants Congress the power to '*regulate* Commerce.' The power to *regulate* commerce presupposes the existence of commercial activity to be regulated." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 520 (2012) (emphasis in original). As discussed above, there is no exercise of commerce inherent in the creation of a state-chartered entity; it is an entirely ministerial act, and many entities so formed do not engage in any commercial activity. By imposing requirements on the mere act of entity formation without any inkling as to whether the formed entity will engage in commercial activity, the CTA clearly exceeds Congress's power to regulate interstate, foreign, and Indian commerce.

60.     Congress did not appear interested in limiting the CTA's scope to its impact on commerce – interstate or otherwise – or any other enumerated power under Congress, instead stating that the Act's purpose was to "set a clear, Federal standard for incorporating practices." 31 U.S.C. § 5336 note (5)(A). Action is compelled by law simply as a result of the formation of an entity under state law; an improper use of Congress' authority. See *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 557 (2012) (Congress may "anticipate the effects on commerce" that an activity may have, but is not "permitted….to anticipate that activity itself in order to regulate

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 20**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

individuals not currently engaged in commerce.").

61.    The CTA commandeers State agencies by coercing States into giving notice to State filers of the CTA's reporting requirements and providing filers with a copy of the CTA filing form.  Because the States are the only agents capable of providing notice to entity formation filers at the time of formation, States are likely to feel compelled to provide the notice and the FinCEN filing links to protect their citizens from the severe criminal penalties that would result from failure to comply with the CTA's filing requirements, and do so regardless of whether FinCEN distributes any meaningful budget allocations to States to exercise those efforts.

62.    Through these requirements, the CTA violates Plaintiffs' rights by exceeding the enumerated powers of the federal government set forth in Article I, Section 8 of the Constitution of the United States, violating the Ninth and Tenth Amendments, and violating the constitutional principles of federalism and retained State sovereignty upon which this Nation was founded.

**COUNT TWO**

**Unconstitutional Invasion of Privacy**

**Unreasonable Search and Seizure Violation of the Fourth Amendment**

**Compelled Self Incrimination Violation of the Fifth Amendment**

**Right of Privacy Violation of the Ninth Amendment**

**(U.S. Const. amends. IV, V, IX)**

63.    Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1 through 54 above.

64.    The CTA is a statute providing for criminal punishments enacted for the purpose of harvesting "sensitive" personal information from individuals to create a vast database for law enforcement purposes by FinCEN and other United States and foreign law-enforcement and intelligence agencies.  The stated purpose of the CTA is to provide the federal government with a supplemental means of enforcing federal criminal laws.  But no matter the degree of

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 21**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

invasiveness, suspicionless searches and compelled disclosures are never allowed if their principal end is crime-solving, and particularly when the basic function of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967). FinCEN's key purpose violates the privacy and security of individuals subject to reporting by inviting arbitrary invasions not just from law enforcement agencies and government officials, but any third party with whom FinCEN chooses to share "sensitive information" without consent of the individual and by threat of civil and criminal penalties for failure to comply. The fact that the CTA, as applied to State, local, and tribal governments, requires non-federal entities to seek a warrant to access FinCEN reporting data makes clear that the federal government's use of FinCEN data is no more than an end run around constitutional safeguards.

65. Privacy is often a key motivation in State entity formation. No State has chosen to require the extent of disclosure of beneficial ownership and applicant information upon filing that the CTA mandates. Upon information and belief, no State, for instance, appears to require birth dates and personal identification numbers of filers. Oregon's entity-formation laws reflect the judgment of the Oregon Legislature that individuals need not disclose sensitive information as a condition of forming corporate entities. Individuals who form an entity under such State laws have a reasonable expectation of privacy from the intrusion of the federal government as to that information. By way of example, Oregon's office of the Secretary of State has a history of standing up to the federal government to protect its citizens from unwarranted invasions of their privacy. When then-President Donald Trump sought the personally identifiable information of all Oregon voters, including all voter birthdates and phone numbers, for his Administration's efforts to seek out and investigate without probable cause those who the President had baselessly accused of committing voter fraud, then-Secretary of State Dennis Richardson rebuffed the

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 22**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

President by redacting personally identifiable information and requiring the President to fill out and pay for a public records request of the non-identifiable voter registration data. The CTA's requirements, like President Trump's demand for sensitive voter data, violate the reasonable expectation of Plaintiffs' privacy by compelling the disclosure of information which, for the CTA's stated purpose, should be protected by the Fourth, Fifth, and Ninth Amendments. The Court should support the Secretary of State's sovereign right to protect the privacy of Plaintiffs and similarly situated Oregon entities from federal overreach and the potential for abuse and misuse of Plaintiffs' "sensitive" information by federal law enforcement and other agencies.

66.     The CTA contains no limitations on the provision of the required personal information to situations where there is an articulable, individualized suspicion of a crime or wrongdoing by such beneficial owners and applicants. In doing so, the CTA violates the core principle of the privilege against self-incrimination under the Fifth Amendment, intended to prevent compelling answers to "questions designed to uncover uncharged offenses, without evidence from another source." *Doe v. United States*, 487 U.S. 201, 212 (1988). The CTA also authorizes the provision of private, personal information to foreign governments, federal regulators, and regulatory agencies without consent of the individual filer, and without any court authorization or specific requirements regarding those federal and foreign government agencies' need for the information.

67.     By requiring under threat of criminal penalty that reporting companies provide individuals' "sensitive" personal information for law enforcement purposes in the absence of specific prior indicia of wrongdoing, the CTA deprives Plaintiffs and similarly situated Oregon entity filers of their privacy rights, and violates the Fourth Amendment, Fifth Amendment, and Ninth Amendment of the Constitution of the United States.

68.     By compelling disclosures and permitting the release of sensitive personal data to federal and foreign government agencies without the reporting company's consent or

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 23**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

authorization from a court of competent jurisdiction, *see* 31 U.S.C. § 5336(c)(2)(B) (requiring court authorization for requests from state, local, or tribal law enforcement agencies and consent from a financial institution, without imposing a similar requirement of court authorization for requests from federal or non-U.S. law enforcement agencies), the CTA violates the Fourth, Fifth, and Ninth Amendment rights of Plaintiffs and others similarly situated.

**COUNT THREE**

**Compelled Speech and Unreasonable Burdens on the Freedoms of**

**Speech and Association**

**(U.S. Const. amend. I)**

69.    Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1 through 54 above.

70.    "Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595. 606-608 (2021) (plurality). Such scrutiny requires a "substantial relation" between the disclosure requirement and the government interest, where the interest must be "sufficiently important….[and] reflect the seriousness of the actual burden on First Amendment rights." *Id.* at 607. An assessment on this scrutiny must take into account which burdens imposed by the disclosure are unnecessary, to ensure that the law is sufficiently narrowly tailored. *Id.* at 611.

71.    Under the CTA, the obligation to report personal information to the federal government arises at the time of formation of an entity under State law. The CTA forces filers to disclose more personal information to the federal government than what is required to be disclosed under State entity-formation statutes; in most States, disclosure of "beneficial ownership" as expansively set forth in the CTA and "applicant" personal information is not required at all. State laws providing for entity formation, however, reflect the States' respective judgments that the provision of such information is not a necessary or appropriate prerequisite of

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 24**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

entity formation.

72.    Some U.S. persons form or seek to form entities under State law, without seeking 501(c) federal tax-exempt status, for social or other non-commercial reasons, such as to organize a private social club or to hold a family property.  Many of these entities and the U.S. persons who would have to be registered under the CTA have a heightened reason to desire privacy.  The CTA compels such entities and individuals to publicly reveal their associations to the federal government, which may in turn transmit that information upon request to: (i) federal and State law enforcement agencies, courts, and prosecutors; (ii) foreign governments and law enforcement authorities; (iii) financial institutions; and (iv) various federal regulators and regulatory agencies.  This forced disclosure will also deter such persons from exercising their rights of free speech and association and dissuade others from joining or assuming leadership positions in the entities (and thus arguably becoming "beneficial owners").

73.    The United States does not have a compelling, overriding interest in obtaining the information required by the CTA because less onerous alternatives are available to accomplish the stated goals of the CTA and the methods employed by the CTA are not narrowly tailored for their stated purpose.  To wit, the most obvious and direct way to stem money laundering and international terrorism funding is to ramp up regulation and scrutiny of large cross-border money transfers, for instance, by banks, financial agents, and escrow agents.  Congress could also choose to fund local law enforcement to support the efforts of police, emergency services, and social welfare organizations who are daily on the front lines of fighting drug and human trafficking.  As aforementioned, it is already a violation of State law to use a corporate entity filing in furtherance of engaging in any unlawful activity.  Vacuuming up personal information about every American who sets up or has a significant stake in a corporate entity is substantially overbroad relative to the CTA's stated purpose.  The requirements of the CTA are neither justified by nor necessary to promote the stated goals of the CTA.

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 25**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

74.     By requiring under threat of criminal sanctions that Plaintiffs and Oregon entity filers disclose information in the manner mandated by the CTA, despite the availability of less onerous alternative methods to achieve the statute's stated goals, the CTA's disclosure requirements constitute compelled speech in violation of the First Amendment to the Constitution of the United States.

75.     By requiring U.S. persons who have formed or wish to form a legal entity to engage in protected speech despite the availability of less onerous alternative methods to achieve the stated goals of the CTA, the CTA violates the First Amendment by burdening the right to speech and private association.  This is particularly true for non-commercial entities that form in Oregon to engage in political speech when one of the CTA's authorized purposes for FinCEN data is to use disaggregated FinCEN data to study "nongovernmental organizations, media organizations, or other academic initiatives in the United States" with respect to how the government might perceive those organizations are trying to "undermine democratic governance in the United States and the partners and allies of the United States."  134 Stat. 4632 § 6508. This provision and proposed use of data required to be reported to FinCEN should give any reasonable person pause as to how that data might be used, and particularly against any required FinCEN filer that is engaged in political speech that holds opposing views to whichever presidential administration is in charge of FinCEN at the time those studies are conducted.  As the Supreme Court recently affirmed, "a substantial relation to an important interest is not enough to save a disclosure regime that is insufficiently tailored.  This requirement makes sense. Narrow tailoring is crucial where First Amendment activity is chilled—even if indirectly— '[b]ecause First Amendment freedoms need breathing space to survive.'"  *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2384 (2021) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     **Page 26**

4876-8546-6308

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

## COUNT FOUR

## Unconstitutional Violation of Due Process

## (U.S. Const. amend. V)

76.     Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1 through 54 above.

77.     Both the CTA and the FinCEN rules relating to the CTA fail to provide definitions specific enough for Plaintiffs, or other ordinary small businesses or non-business entities, to understand what conduct is required to avoid criminal sanctions including, but not limited to, failing to sufficiently define "beneficial owner," "understanding," "relationship," "substantial control," and "applicant."  All these terms, most significantly "beneficial owner" and "applicant," have no obvious analogue in State entity formation laws, which typically address "organizers," "incorporators," and "registered agents."  In addition, the CTA's overall framework for mandatory reporting, updating, access, and record-keeping is so vague and complex that Plaintiffs and most other ordinary small businesses or non-business entities cannot reasonably comply with these requirements.

78.     Should Plaintiffs and other ordinary small businesses or non-business entities be required to comply with the vague and complex requirements of the CTA to avoid criminal penalties, they will be forced to incur substantial costs and other burdens.  The stated goals of the CTA do not justify the enormous burden it places on small businesses and non-business entities and the CTA's stated goals can be accomplished through less onerous alternative means.

79.     By subjecting Plaintiffs and others to civil monetary penalties without adequate notice of the actions required to avoid the penalties, and by failing to provide to Plaintiffs and others a meaningful way to contest the civil penalties through an appeals process, the CTA violates the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

80.     By subjecting Plaintiffs and others required to report to FinCEN to potential

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 27**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

criminal sanctions under the CTA without adequate notice of the actions required to avoid the sanctions, and, while also expanding the federal government's discretion in how FinCEN can enforce those requirements, the CTA violates the Due Process Clause of the Fifth Amendment of the Constitution of the United States.

## COUNT FIVE

### Cruel and Unusual Punishment; Excessive Fines

### (U.S. Const. amend. VIII)

81.     Plaintiffs reallege and incorporate by reference each of the Complaint's allegations stated in paragraphs 1 through 54 above.

82.     Regulating the administerial action of corporate or other entity registration is the responsibility of the State of Oregon.  The State, by its own policy choice, has foregone requiring the type of "sensitive information" Defendants seek to collect by compelling Plaintiffs and other entity filers to comply with FinCEN reporting requirements under threat of civil and criminal penalties.

83.     On information and belief, FinCEN has done less than the CTA states is required of the agency related to informing the 32 million (and counting) entities it seeks to regulate.  The CTA is unclear whether filers with more than one entity will be subject to a $500 a day fine per entity, or per filer.  This could result in thousands of dollars per day in fines if a filer has more than one entity.  And the CTA provides no safe harbor for a filer on the basis that they neglected to file their "sensitive" information with FinCEN (whether they understood from the vague language of the CTA they were required to or not).  These are serious fines for failure to comply with a ministerial duty that has not historically belonged to the federal government to administer.  By contrast, a failure to organize under the laws of the State of Oregon carries no such fines like the CTA, and Oregon does not require a general business license.

84.     Plaintiffs and other filers are left with no meaningful choice: accept being

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 28**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

criminalized and punished with daily compounding civil fines and criminal penalties, including the possibility of imprisonment if they don't subject themselves to the Financial Crimes Enforcement Network reporting requirement, or cede their constitutional rights to the U.S. Treasury and any other law enforcement or regulatory agency that can access FinCEN databases in furtherance of engaging in warrantless law enforcement activity. Plaintiffs' choices are no choice at all.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.      Declare the CTA to be facially unconstitutional as applied to Plaintiffs and other Oregon entities that are subject to FinCEN reporting requirements;

B.      Declare that the CTA exceeds Congress's authority under Article I of the Constitution and encroaches upon the State's respective sovereignty in violation of the Ninth and Tenth Amendments;

C.      Declare that the CTA violates (i) the Fourth Amendment's reasonable expectation of privacy from unreasonable searches and seizures without probable cause or articulable suspicion; (ii) the Fifth Amendment's privilege against self-incrimination; and (iii) the Ninth Amendment's retention of unenumerated rights to the People;

D.      Declare that the CTA violates the First Amendment's right to speech and private association, and the First Amendment's prohibition on compelled speech;

E.      Declare that the CTA violates the Due Process requirements of the Fifth Amendment;

F.      Declare that the CTA violates Plaintiffs' rights to not be subjected to excess fines or cruel and unusual punishment, from which they are protected under the Eighth Amendment;

G.      Enjoin Defendants and any other agency or employee acting on behalf of the United States from enforcing the Act against Plaintiffs and other similarly situated Oregon entity

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 29**

4876-8546-6308

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

filers, and to take such actions as are necessary and proper to remedy their violations deriving from any such actual or attempted enforcement; and

H.       Award Plaintiffs their costs and grant such other relief under the Equal Access to Justice Act, or as the Court may deem just and proper.

DATED this 27th day of June, 2024.

KELL, ALTERMAN & RUNSTEIN, L.L.P.


BY    s/ Thomas R. Rask, III
    Thomas R. Rask, III, OSB No. 934031
    trask@kelrun.com
    Julie Parrish, OSB No. 233864
    jparrish@kelrun.com
    520 SW Yamhill St., Suite 600
    Portland, OR  97204-1329
    Telephone:  (503) 222-3531
    Fax:  (503) 227-2980
    Of Attorneys for Plaintiffs
Trial Attorney:  Thomas R. Rask, III

PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    **Page 30**

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980